HEARD APRIL TERM, 1872.

## ROOF *vs.* RAILROAD COMPANY.

The rule in *Danner's* case, 4 Rich., 329, that negligence is to be presumed from the killing of cattle by a railroad train, and that proof of the fact of killing throws the *onus* upon the company, sustained upon the principle of *stare decisis.*

This was an action by Jesse Roof, plaintiff, against the Charlotte, Columbia and Augusta Railroad Company, defendant. The only point of law made by an appeal and decided by the Court is stated in the opinion of the Court. (*a.*)

Dec. 18, 1872. The opinion of the Court was delivered by

WRIGHT, A. J. The exception relied on seeks to reverse the rule in the case of *Danner* vs. *The South Carolina Railroad,* 4 Rich., 329.

It establishes a rule of evidence in holding that the killing of cattle by a railroad train is *prima facie* evidence of negligence, throwing upon the company the *onus* of showing that it was not only unintentional but unavoidable, and without the least fault on the part of the engineer. It may be that it is not in exact consistency with the rule generally adopted either in England or many of the States of the Union. In fact, no uniform rule has been recognized, for, while all the cases admit the liability of the railroad companies for injuries, either to person or property, caused by negligence in running their trains, on the one hand, it has been held, in Pennsylvania, that, independent of statutory provisions, they are not bound to run with any reference whatever to the possibility of cattle getting on their track.—*New York and Erie Railroad Company* vs. *Skinner,* 19 Penn. R., 298. On the other, "in California, it seems to be

(*a*) The two opinions delivered in this case are the only papers with which the Reporter has been furnished. He is unable, therefore, to show, by a statement of the facts, or the evidence, the ruling of the Circuit Court, and the exception, how the question of law arose, but this is hardly necessary where the Judges themselves say that the case involved an abstract question of law and state in clear and unmistakable language what that question is.

considered, that the custom of the country to suffer domestic animals to go at large on the commons, will override the rule of the common law, obliging the owner to restrain his cattle within enclosures, and that, consequently, no negligence is imputable to the owner on account of his suffering his animals to go at large."—1 Redfield on Railways, 478.

In this State, it is to be remembered that cattle are allowed by law to range at large, and the decision, therefore, sought to be reversed should be shown to be obnoxious to every principle of common right and inconsistent with the general rule which governs the use of property, before its reversal should be ordered by the Court. If it violates no fundamental right of the citizen, or imposes no additional restriction in the enjoyment of his property, it should not be changed, because, as a mere rule of evidence, it may not be in accordance with the principles applied by other States in the regulation of railroad companies.

Where the requisition of State Court in regard merely to a rule of evidence has prevailed for over twenty years unchallenged and unchanged by the legislative department of the government, its result may well be accepted as the common law of the State.

*Danner's* case was decided in January, 1851, enforced in 1857, in *Murray* vs. *South Carolina Railroad Company,* 10 Rich, 227, and recognized in *Wilson* vs. *Wilmington and Manchester Railroad Company, Ibid,* 52.

In *Morse* vs. *Adams,* 2 S. C., 56, we expressed our disfavor of the reversal of the decisions of the appellate tribunal of the State which for years had been accepted by its citizens as the law, unless some obviously practical reason showed the necessity of a change.

In *Gage* vs. *City Council of Charleston,* (3 S. C., 492,) which involved the consideration of a point theretofore decided, the Court said : " We have rather held it our duty to consider whether any controlling policy has been shown which should induce us to overrule it." *Omnis innovatio plus novitate perturbat quam utilitate prodest,* is a precept long accepted and recommended, as well by the good sense on which it is founded as its beneficial effects in maintaining the permanency of rules after once fixed, established and known to the community.

Mr. *Broom,* in his legal maxims, at page 149, well says, " it is then an established rule to abide former precedents, *stare decisis,* where

the same points come again in litigation, as well to keep the scale of justice even and steady, and not be liable to waver with every new Judge's opinion, as also because the law in that case being solemnly declared and determined, what before was uncertain and perhaps indifferent is now become a permanent rule, which it is not in the breast of any subsequent Judge to alter or swerve from according to his private sentiments, he being sworn to determine not according to his own private judgment, but according to the known laws and customs of the land ; not delegated to pronounce a new law, but to maintain and expound the old one, *jus dicere et non jus dare.*"

The difficulty on the part of the owner, from the absence generally of himself or third persons from the place in which the injury is inflicted, to show how it occurred, and the facility of the company, from its many employees present, to prove that it was accidental and unavoidable, makes it neither unreasonable nor unwise, when cattle are killed by the passing trains, to hold that *prima facie* the fact of negligence is established, throwing the *onus* of rebutting it on the company.

It is not necessary to consider the other points made, for the counsel of the appellant stated that unless the judgment was reversed on the first exception he did not desire the case to be sent back on either of the other grounds which he submitted.

The motion for a new trial is refused.

*Moses*, C. J., concurred.

WILLARD, A. J. The principal question in this case involves a reconsideration of the point ruled in *Danner* vs. the *South Carolina Railroad Company*, 4 Rich., 329. The question is, it appearing that straying cattle had been killed by passing trains, whether the presumption of negligence in the conduct of the train, as the proximate cause of the injury, arises as a legal consequence, devolving upon the defendants the *onus* of showing that there was absence of negligence. The rule contended for by the plaintiff, and applied by the Circuit Court to the case, is supported by *Danner's* case. It is clear, upon all the authorities, that if that rule is sound, it is to be regarded as one exception to the general rule that requires a party alleging negligence to prove it, or that there is something in the circumstance of a railroad train running over a straying animal that carries with it evidence of negligence.

If we are bound by *Danner's* case, the plaintiff is entitled to his verdict. Is there ground to question the conclusion arrived at in that case ? That decision received the support of judicial names that command respect. Its conclusions are entitled to be approached with caution and consideration. This Court has invariably paid a scrupulous regard to the maxim *stare decisis*, unwilling either to weaken the weight of judicial authority or to unsettle the foundations on which legal certainty rests.

The principles that should govern a Court in reconsidering a question once judicially acted upon, are clear in their application to the present case. If an erroneous construction has been put on a statute, or upon a form of expression employed in a contract, will, or other instrument, and such construction has become woven into a course of judicial decisions, and the rights and obligations of individuals have become conformed to it, the strongest possible reasons can alone justify the subsequent diminution of such error. If, on the other hand, a rule of evidence has been misconceived or misapplied, so as to impair the logical and practical value of one of the fundamental rules on which all rights of person and property rest, then a greater latitude of correction is allowed consistently with the maxim *stare decisis*.

The reason of this distinction is obvious. In the class of cases first referred to, the effects of the error are generally limited to the particular subject of the judicial decision in which such error occurred, while in the last named class, fundamental rights being affected, it is impossible to set a limit to the consequences or effects of the error.

The case under consideration belongs to the class last named. It is a fundamental principle of our law that no man shall be charged with wrong, unless such wrong is duly established by proof. Corporate bodies, as well as private persons, are entitled to the benefit of this rule. The case of one charged with damages by reason of negligence imputed is within the rule.

An allegation of negligence presupposes a duty calling for the exercise of care. If a failure in the performance of such duty is alleged, it cannot be presumed without proper proofs. If difficulty of proof in a particular case, or class of cases, or the introduction of novel features in some known relation, as the result of physical discovery or invention, can constitute an exception to this universal and fundamental rule, its conservative value to society is lost. It

would be impossible to predict, in that event, that human society would not outgrow its fundamental truths.

The most dangerous mode of attacking the integrity of a great principle of personal right or immunity is to bring to bear upon it an artificial presumption of law that has no foundation in human reason.

If it be found that the decision in *Danner's* case stands in such a relation to that great principle that shields the citizen against unproved charges, then reason must condemn it, and our duty to declare the rule in consonance with right reason is imperative.

The fact that the killing of an animal was occasioned by a passing railroad train does not tend to prove negligence on the part of the persons conducting the train. To assume the contrary we must also assume one of two propositions—either that the killing an animal under such circumstances is, in itself, negligence, or that the killing could not have occurred without negligence. No one will affirm either of these propositions. It is not enough to justify such a presumption that, as a general rule, the probability is on the side that negligence existed. This would be, in effect, balancing legal conclusions on a calculation of chances, depriving the law of its scientific character and certainty.

The result arrived at in *Danner's* case is founded on two conclusions, which appear, both on reason and authority, to be unsound. The first is, that on an action of trespass against the engineer, the fact of killing would, in itself, tend to establish negligence on the part of the engineer; the second is, that the same presumptions ought to arise out of the fact of killing in an action against the company for the negligence of its engineer that would be allowed in the case of trespass against the engineer.

It is to be observed that although the distinction between trespass *vi et armis* and *case* is no longer of importance as a test of the form of action proper to be brought, yet it is a substantial distinction, that, as to pleadings, evidence and presumptions therefrom must still be regarded as inhering in the very ground of right and redress.

If an action had been brought against the engineer, the ground of relief would have been a trespass *vi et armis*.

In such action the proof of the fact of killing by immediate force, and of the relation of the defendant to such act, would have been sufficient to establish the plaintiff's right to judgment, but

such sufficiency would not have resulted from the idea that such killing tended to prove negligence on the part of the engineer. The question of negligence is not at issue upon pleadings, on the one hand charging a damage and injury by direct force on the part of the defendant, and on the other hand denying such force and injury.

The ground of the action for a trespass *vi et armis* is damage and injury resulting directly from physical force originated, directed or set at large by the defendant. If the damage and injury is not direct, but a consequential result, the act of wrong is not a trespass *vi et armis*, but an injury, formerly redressed by an action on the case.

*Leame* vs. *Bray*, (3 East, 563): In this case there was an injury resulting directly from force under the direction of the defendant. The defendant, driving at night upon the wrong side of the road, came in contact with plaintiff's vehicle, causing the injury complained of.

The plaintiff was non-suited on the ground that "the injury having happened through negligence, and not wilfully, the proper remedy was an action on the case, and not trespass *vi et armis*." The non-suit was not set aside, and it was held by Lord Ellenborough as follows: "If the injurious act be the immediate result of force originally applied by the defendant, and the plaintiff be injured by it, it is the subject of an action of trespass *vi et armis*, by all the cases, ancient and modern. It is immaterial whether the injury be wilful or not." The other Judges concurred in the conclusion thus stated. The enquiry into either the wilfulness or negligence of the act was thus judged irrelevant to the true issue of an action of trespass *vi et armis*.

*Wenver* vs. *Ward*, (Hob., 134): It was attempted in this case to excuse the trespass *vi et armis* on the ground that the act of defendant that caused the injury was unintentional, as it regarded its effect on plaintiff, or, in other words, that the injury was the result of accident alone. It appeared that the injury was the result of defendant's misfortune in discharging his piece so as to injure the plaintiff, and not of plaintiff's misfortune in happening into a position of danger. It did not appear that the act was inevitable, or the consequence of superior force, and it was therefore adjudged that the defendant was liable.

That case goes a step further in the direction indicated by the

case last cited, and holds the enquiry, whether the injury was caused by accident, apart from the idea of wilfulness or negligence, to be irrelevant, though conceding that it might have become pertinent to enquire whether it resulted wholly from inevitable accident. It also recognizes the fact, that if inevitable accident is al. leged, an issue of negligence may arise. In such case, the question of negligence is important solely as affecting the question whether the accident is to be regarded as inevitable.

*Scott* vs. *Shepherd*, (3 Wills., 403): This was an injury from force originated and set at large by the defendant. A lighted squib was thrown into a market house, and fell near A., who, to save himself and his property from injury, threw it in the direction of B., who, for the same reason, threw it unintentionally in the direction of plaintiff, with whom it came in contact, causing the injury complained of. The injury was occasioned by the fire lit by the defendant, and set at large by him, by throwing it into the market house. The case was discussed by Blackstone as if the injury had resulted from the force exerted by B., in throwing it to the point where the plaintiff was; but that does not appear to have been the proximate cause of the injury. Regarding the fire as the cause of injury, it was undoubtedly a force imputable to the defendant, as he lit it and set it at large in a place where it might do damage. Taking this view of the case, it is fairly within the principle illustrated by the case of turning at large a ferocious animal, stated by Nares, J., and is not well illustrated by the instance cited by Blackstone of an injury resulting from the throwing of a ball.

Nares, J., defines the ground of the action as follows: "If the injury done be not inevitable, the person who doth it, or is the immediate cause thereof, even by accident, misfortune, and against his will, is answerable in the action of trespass *vi et armis.*"

In this statement there is no room to interpolate negligence as an element of the question at issue.

The foregoing cases develop the whole doctrine relating to trespass *vi et armis*, and show that the question of negligence cannot properly enter into the case, unless it is claimed that the injury resulted from inevitable accident, and, in that case, it is only of importance as refuting the idea that the accident was inevitable.

It cannot, therefore, be affirmed that in an action of trespass *vi et armis* any such rule is operative as that laid down in *Danner's* case, namely: That the proof of the fact of injury,

arising from the act of the defendant, gives rise to a presumption of negligence on his part.

The second proposition drawn from *Danner's* case, namely: That the same rule of presumptions applicable to trespass *vi et armis* as against the servant should obtain in an action against the master for the negligence of the servant, besides being inapplicable to the present case, for the reasons above stated, is in itself unsound. It assumes that the same ground and measure of liability affects the master that exists against the servant.

If the master was liable for the consequences of the act of wrong of his servant to the same extent as the servant is liable to a person injured by it, there would be a reason for the application of such a rule; indeed, the relation would, in that case, clearly resemble that of principal and surety. But this is not the measure of the master's liability. The servant is liable for all the damage and injury resulting from his act; the master is liable only so far as these consequences can be imputed to the negligence of his servant. If, therefore, the servant has acted wilfully, the act cannot be referred to negligence, and the ground work of the action, as against the master, is disproved.—*McManus* vs. *Cricket*, 1 East., 106 ; *Wright* vs. *Wilcox*, 19 Wen., 342.

The measure of liability, just stated, is inapplicable to the case of a trespass committed by a servant by the command or direct participation of the master, for, in that case, the act is, as to all its consequences, to be regarded as the act of the master, and he may be sued as for a trespass *vi et armis.*—1 Black. Com., 405; *Sanignoe* vs. *Roome*, 6 Tenn. R., 125.

Where the trespass of the servant is not the trespass of the master, as where it is done by his direct command, the master's liability depends upon the concurrence of two circumstances: First, that the injury is attributable to negligence; and, second, that it was done in the course of his master's business.

Blackstone says, (Com., Vol. 1, p. 431 :) "If a servant, lastly, by his negligence, does any damage to a stranger, the master shall answer for his negligence." The rule, as applied by the adjudicated cases, is to the same effect.—*Turbeville* vs. *Stampe*, 1 Ld. Raym., 264; *McManus* vs. *Crickett*, 1 East., 106 ; *Muley* vs. *Gaisford*, 2 H. Bl., 442; *Craft* vs. *Alistree*, 6 Eng. C. L., 528 ; *Wright* vs. *Wilcox*, 19 Wen., 342.

*Piggot* vs. *Railroad*, 54 Eng. C. L., 228; *Albridge* vs. *Railroad*, 42

Eng. C. L., 272; and *Chester* vs. *Griggs*, 2 Camp., 79, were noticed by Judge Trest as supporting the proposition that negligence can be presumed from the naked fact of damage done. They do not, however, support the proposition as stated and applied in *Danner's* case, nor as charged in the present case.

*Piggot* vs. *Railroad*: In this case it was held that the fact that the locomotive engines of the defendants emitted sparks that were likely to cause damage to surrounding property was, in itself, ground for presuming negligence. This conclusion is based on the idea that such emission of sparks might and ought to be prevented, and therefore, *per se*, ground for inferring negligence.

It should be borne in mind that the negligence to be inferred, on such proofs, was negligence in the construction and equipment of the engines, and, therefore, was capable of being imputed directly to the defendants. It was not negligence of the servant imputed to the master, under the rule of *respondeat superior*. That ruling has, therefore, no bearing on this case.

The only other point ruled in *Piggot* vs. *Railroad* is that where premises near to a railroad on which locomotive engines were accustomed to run were burned, it was competent to show that other engines employed by the defendants on the same road were accustomed to throw sparks and cinders, as tending to show a possibility that the fire originated from such a source. The Court declined to examine the admissibility of this evidence in any other point of view.

This authority does not, therefore, support the proposition that the proof of damage by killing animals warrants a presumption of negligence as its proximate cause.

*Albridge* vs. *Railroad:* The only point ruled in this case is that presumption of negligence, when drawn from the circumstances of a case, is a conclusion of fact to be drawn by a jury, and, therefore, on a case made for the opinion of the Court, the Court could not, as a conclusion of law, draw such an inference of law from a general state of facts.

It will be interesting to notice the fact that the doctrine of *Danner's* case was advanced by Channel, Sergeant, in the case of *Albridge* vs. *Railroad*, and was combatted, during its presentation, by Tyndal and the other Judges, and was actually abandoned by Channel before the conclusion of his argument, nor was it afterwards noticed by the Court.

*Chester* vs. *Griggs*, (2 Camp., 79) : This was *assumpsit*, and not *case*.

The action was by a passenger against a common carrier, on a breach of his contract to carry with safety. The plaintiff showed, as a breach, an injury received by the breaking of the coach, and it was held that the defendant was bound to disprove negligence. The plaintiff was not seeking to recover on the ground of negligence, but on a contract which, *prima facie,* had not been performed. The defendant attempted to excuse his failure to perform on the ground that he had exercised due care and diligence, and, to accomplish this, the *onus* was held to lie upon him to exclude all presumption of negligence.

A few points will be noticed in the general discussion of this subject by Judge Frost. He says: "Proof of the act, and of the injury resulting from it, is *prima facie* evidence that the act was done wilfully or negligently." This observation is open to the criticism of being indefinite as to what shall constitute *prima facie* evidence, and also in connecting two conclusions with such *prima facie* proof as the only conclusions possible to arise therefrom. Had he said, "proof of the circumstances attending the killing, and of the damage resulting therefrom, is sufficient, in itself, to authorize the jury to say whether it was a case of wilful trespass or of negligence," it would have been unobjectionable. But the mode in which he subsequently applies this proposition shows that it was intended to be made as if saying that the proof of the *fact* of killing and of the injury resulting," &c. The circumstances attending the killing are doubtless sufficient to put the jury on an inquiry into the cause. But these circumstances must be the subject of proof, in order to open the cause of the damage to the jury. If the fact of killing can only be made out presumptively, that fact, when ascertained, can throw no light, in itself, upon the proximate cause of the injury, for it exists as a mere deduction of the mind, without power of illumination as to its causes or antecedents. The proposition, as applied in *Danner's* case, and charged in this, is substantially this: an animal being found dead near a railroad track along which trains have been known to run, may be presumed to have been killed by a passing train; as the facts and circumstances of the killing are important as bearing on the question of negligence, they may be assumed also from the fact of finding the animal dead. Thus the conclusion would be reached by allowing one presumption to be based upon another, an altogether inadmissible mode of arriving at judicial conclusions.

Again, as it regards the connecting of wilfulness and negligence, had he said that proof of the circumstances established either that the killing was wilful, negligent or accidental, then the proposition would be complete. The omission of accident from this category renders the proposition imperfect.

Again, Judge Frost says : " The only enquiry for the jury was, did the injury result from negligence or accident? If not accidental, it must have been negligent." He then concludes that it is the duty of the defendant to show that it was accidental, in order to avoid the conclusions that it was negligent. In other words, the plaintiff tenders an issue that the act was either negligent or accidental ; he does not offer to prove that it was negligent, but demands of the defendant proof that it was accidental, at the peril of being otherwise adjudged negligent.

An issue of negligence consists of a charge, on the one hand, of the fact of specific negligence, and, on the other hand, of a denial of such fact.

Suppose, however, that the fact alleged by the plaintiff, in his pleadings, was, that the killing was either negligent, on the part of the defendant, or accidental ; in that case the illogical character of the issue tendered would at once have been apparent. If a state of facts is presented by a plaintiff, admitting of either of two conclusions, one of which tends to establish the plaintiff's claim, and the other to defeat it, the law at once adjudges the plaintiff's case bad, as it does not necessarily lead to the conclusion that he seeks to establish.

The charge, in the present case, virtually states that the fact of negligence may be inferred in the absence of the circumstances attending the killing, where there is reasonable ground to conclude that the animal was killed by a passing train. This is not, and cannot be, law, so long as its conclusions are consistent with right reason.

It is unnecessary to consider the hardships that may ensue to the owners of straying cattle if the rule of the common law is vindicated in its purity. If evils exist they are the proper subjects of legislative consideration. It is the first duty of the Courts to preserve the purity and right reason of the law. This duty being carefully performed, society will, by other appropriate means, rectify the inconveniences which, at the most, are temporary merely, while an injury inflicted on the purity of the law is permanent, and well nigh incurable.

It is unnecessary to cite the authorities tending to show that the rule in *Danner's* case is not recognized by any other authorities, English or American; for that fact was not disputed upon the argument, and is indisputable.

The refusal of the Court to charge that the value fixed on the animals killed by the plaintiff, in returns for the purposes of taxation, was conclusive upon the plaintiff, was free from error. The fact of value was to be ascertained from all the proof bearing on that question, including any statements made by the plaintiff of their value for any purpose whatever.

For the reasons assigned above, I am compelled to dissent from the conclusions of the majority of the Court.